UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STATE NATIONAL INSURANCE COMPANY, INC., ADMINISTERED BY: CONTRACTOR MANAGING GENERAL INSURANCE AGENCY, INC., <br><br> Plaintiff, <br><br> v. <br><br> ARMANDO GARCIA d/b/a OVERALL CONSTRUCTION and ARMANDO GARCIA, <br><br> Defendants. | § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 3:15-CV-3750-B |

## MEMORANDUM OPINION & ORDER

Before the Court is Plaintiff's Motion for Default Judgment as to Defendants. Doc. 14. For the following reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion.

### I.

### BACKGROUND

On November 27, 2012, Defendants Armando Garcia d/b/a Overall Construction and Armando Garcia executed a General Indemnity Agreement in favor of Plaintiff State National Insurance Company, Inc., administered by Contractor Managing General Insurance Agency, Inc. (CMGIA or Surety). Doc. 1, Pl.'s Original Compl. 2. Under this agreement, Defendants jointly and severally agreed to:

> indemnify and hold the Surety harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses of whatever kind or nature together with interest thereon at the maximum rate allowed by law, which

arise by reason of, or in consequences of, the execution by the Surety of any Bond on behalf of the Principal and whether or not the Surety shall have paid any sums in partial or complete payment thereof, including but not limited to:

> 2.1 Sums paid including interest thereon at the maximum rate allowed by law, or liabilities incurred in the settlement or the adjustment of any and all claims, demands, damages, costs, losses, suits, proceedings, or judgments;
> 2.2 Expenses paid or incurred in connection with claims, suits, or judgments under such Bonds;
> 2.3 Expenses paid or incurred in enforcing the terms of this Agreement;
> 2.4 Expenses paid or incurred in procuring or attempting to procure release form liability under its Bond by Surety;
> 2.5 Expenses incurred in recovering or attempting to recover losses or expenses paid or incurred;
> 2.6 All attorney's fees and all legal expenses related to any items herein, including in-house attorney's fees, expert witness fees, costs and expenses, including but not limited to investigation, accounting or engineering services;
> 2.7 Premiums on Bonds issued by Surety on behalf of the Principal;
> 2.8 Monies advanced or loaned under this Agreement.

Doc. 14-2, General Indemnity Agreement, Ex. A-1. After this agreement was executed, CMGIA issued a performance and payment bond (Bond) on behalf of Overall in connection with a construction project for the Children's Learning Adventure, Coppell, Texas (Project). Doc. 1, Pl.'s Original Compl. 2. CMGIA claims that Defendants failed to complete the Project for which the Bond was issued, and as a result of Defendants' defaults, CMGIA has incurred and paid losses and expenses under the Bond in the amount of $ 143,136.80. *Id.* at 3; Doc. 14, Pl.'s Mot. for Default J. ¶ 2. CMGIA asserts that despite demanding payment from Defendants, they have failed or refused to indemnify CMGIA as provided in the General Indemnity Agreement. Doc. 1, Pl.'s Original Compl. 6.

On November 20, 2015, CMGIA filed this lawsuit against Defendants and brings claims for

breach of the General Indemnity Agreement and common law indemnity. *Id.* at 3–4. CMGIA seeks relief in the form of exoneration and *quia timet*. *Id.* at 4–5. CMGIA also seeks specific performance of the indemnity agreement, along with recovery of attorneys' fees and expenses. *Id.* at 5. On April 13, 2016, the Court ordered CMGIA to show cause why it had not filed a valid return of service for Defendants. Doc. 6, Order. In response, CMGIA filed a Motion for Substitute Service outlining the difficulty it had in serving Defendants and moved for substituted service. Doc. 7, Mot. for Substituted Service. The Court granted CMGIA's Motion. Doc. 9, Order. On September 7, 2016, CMGIA filed returns of service as to both Defendants. Docs. 10, 11. On September 12, CMGIA requested that the Clerk issue default and the Clerk entered default against both Defendants. Doc. 13. CMGIA then filed its Motion for Default Judgment on September 28, 2016. Doc. 14. The Court will turn to its analysis of CMGIA's Motion.

## II.

## LEGAL STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once default has been entered, the Court may enter a default judgment against the defaulting defendant upon motion of the plaintiff. Fed. R. Civ. P. 55(b)(2). Through the entry of default judgment, the "conduct on which liability is based may be taken as true as a consequence of the default." *Frame v. S-H, Inc.*, 967 F.2d 194, 205 (5th Cir. 1992) (citations omitted). In considering a motion for default judgment, the court accepts as true the well-pleaded allegations of facts in the complaint. *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

In determining whether a default judgment should be entered against a defendant, courts

have developed a two-part analysis. *See, e.g., Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *2, 3 (S.D. Tex. Oct. 5, 2011). First, the court must consider whether entry of default judgment is appropriate under the circumstances. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The factors relevant to this inquiry include: (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion. *Id.* Second, the court must assess the merits of the plaintiff's claims and find sufficient basis in the pleadings for the judgment. *Nishimatsu Constr.*, 515 F.2d at 1206. Although the defendant may be in default, "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.*

### III.

### ANALYSIS

*A.   Whether Default Judgment is Appropriate*

In considering the six factors outlined in *Lindsey*, the Court finds that they weigh in favor of granting a default judgment. Defendants have not filed any responsive pleadings in the present matter. Consequently, there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"). Defendants' "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing [CMGIA's] interests." *Ins. Co. of the W.*, 2011 WL 4738197, at *3 (citing *Lindsey*, 161 F.3d at 893). In addition, there is no evidence before the Court to indicate that Defendants' silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at

893. Indeed, Defendants had over six months to respond to CMGIA's Complaint and over five months to respond to the present Motion, and still they have filed nothing to explain their silence. *Cf. Elite v. KNR Grp.*, 216 F.3d 1080, 2000 WL 729378, at *1 (5th Cir. May 19, 2000) (per curiam) (holding default judgment to be inappropriate where defendant sent letter to court explaining that failure to appear was due to financial privation). Defendants' complete failure to respond during this time therefore "mitigat[es] the harshness of a default judgment" against them. *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-cv-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013). Finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if challenged by Defendants. *Lindsey*, 161 F.3d at 893. Therefore, the Court concludes that default judgment is appropriate under these circumstances.

B.  *Whether There is a Sufficient Basis for Judgment in the Pleadings*

Due to its default, Defendants are deemed to have admitted the allegations set forth in CMGIA's Complaint. Nonetheless, the Court must review the pleadings to determine whether CMGIA can establish a viable claim for relief. *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover").

As discussed above, CMGIA asserts claims for breach of the General Indemnity Agreement and common law indemnity. Doc. 1, Pl.'s Original Compl. 3–4. CMGIA seeks relief in the form of exoneration and *quia timet*. *Id.* at 4–5. CMGIA also seeks specific performance of the indemnity agreement, along with recovery of attorneys' fees and expenses. *Id.* at 5.

To prevail on a breach of indemnity agreement claim under Texas law, a plaintiff must establish five elements: "(1) a contractual indemnity agreement existed between the [parties],

(2) the agreement obligated the [Defendants] to indemnify [CMGIA] in the event claims were made on the bonds issued . . . (3) claims were made on the bonds issued . . . (4) all conditions precedent for recovery had occurred, been performed, waived, or excused, and (5) [CMGIA] has been damaged." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 719 (5th Cir. 1995).

Here, CMGIA alleges that it entered into a General Indemnity Agreement with Defendants, where they agreed to indemnify CMGIA for any and all losses or expenses incurred by CMGIA in connection with issuing the bond. Doc. 1, Pl.'s Original Compl. 2–3. CMGIA also asserts that the Obligee of the Bond made a demand on CMGIA to honor its obligations under the Bond. *Id.* at 3. CMGIA alleges that it made a demand on Defendants to fulfill their obligations and indemnify CMGIA, but Defendants failed to do so. *Id.* at 3–4. CMGIA states that all conditions precedent to recovery have occurred or have been performed. *Id.* at 3. And finally, CMGIA alleges that it has been damaged by the loss of $143,136.80 paid on the Bond and $3,652.50 paid in consulting fees as a result of the claims made against the Bond. *Id.* at 3; Doc. 14-1, Aff. of Stephanie Hope Shear, Ex. A. Taking these allegations as true, CMGIA has satisfied the elements to make out a valid claim for breach of an indemnity agreement.[1]

Although a default judgment against a defendant conclusively establishes its liability, it does

---

[1] CMGIA also brought claims for common law indemnity, specific performance, exoneration, and *quia timet*. Under Texas law, "common-law indemnity is extremely rare and '[o]nly a vestige of common law indemnity remains.'" *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 360 (5th Cir. 2008). The only remaining vestiges of it "involve purely vicarious liability." *Id.* (citations omitted). As this is not the case here, CMGIA cannot maintain a common law indemnity claim. Further, specific performance is not a cause of action but rather an "equitable remedy that is normally available only when the complaining party cannot be fully compensated through the legal remedy of damages or when damages may not be accurately ascertained." *General Universal Sys., Inc. v. Lee*, 379 F.3d 131, 153 (5th Cir. 2004). The Court finds this kind of relief unnecessary here. Lastly, CMGIA's Motion for Default Judgment does not request that the court enforce its rights to exoneration and *quia timet*. As such, the Court will refrain from determining whether Plaintiff is entitled to such relief.

not establish the amount of damages. *U.S. for Use of M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987)(noting that after default the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages). Accordingly, it remains CMGIA's burden to provide an evidentiary basis for the damages it seeks. The Court will address CMGIA's claim to damages below.

C.  *Damages*

    1.  Actual Damages

Damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *United Artists Corp. v. Freeman,* 605 F.2d 854, 857 (5th Cir. 1979). If the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, however, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

In support of its request for damages of $146,789.30, CMGIA has submitted a copy of the General Indemnity Agreement, an affidavit of the president of CMGIA, and an affidavit of its attorney, Ryan D. Dry. The president of CMGIA provides in her affidavit that "[a]fter the Bonds were issued, [Defendants] had difficulty completing [their] bonded project and the Obligee made demand on [CMGIA] to honor its obligations under the performance Bond and remedy and/or complete the Project. On June 4 2015, [CMGIA] entered into an Agreement with the Obligee for $143,136.80 as consideration for its obligations under the Bond." Doc. 14-1, Aff. of Stephanie Hope Shear, Ex. A, at 2. And additionally, she states that CMGIA has incurred $3,652.50 in consulting fees as the result of the claims made against the Bond, so the total amount CMGIA seeks under the Agreement is $146,789.30. *Id.*

CMGIA does not give any detail, however, on how those amounts were calculated. In *Arch Ins. Co. v. WM Masters & Assocs., Inc.*, a Northern District of Texas court awarded plaintiffs the indemnification amount they were allegedly entitled to because their "losses [were] fully itemized, and thus capable of mathematical calculation," and thus could be awarded without an evidentiary hearing. No. 3:12-cv-2092-M, 2013 WL 145502, at *5 (N.D. Tex. Jan. 14, 2013); *see also Ins. Co. of the W.*, 2011 WL 4738197, at *5 (finding the amount to be awarded for indemnification could be determined without an evidentiary hearing because the plaintiff had attached an affidavit listing the bonds issued, as well as an itemized statement of losses and expenses incurred by the surety on each bond). Here, CMGIA provides a total number for indemnification and a total number for consulting fees; there is no way, however, for the Court to determine a sum with certainty by reference to the pleadings and supporting documents alone. Therefore, as to CMGIA's request for actual damages, the Motion is **DENIED** pending supplementation of the record.

2.   Attorneys' Fees

The Texas Civil Practice and Remedies Code permits an award of reasonable attorneys' fees to a prevailing party on a breach of contract claim.[2] Tex. Civ. Prac. & Rem. Code § 38.001(8). "To recover attorney's fees under Section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (citing *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 437 (Tex. 1995)).

The determination of a fee award is a two-step process. "First, the court calculates the 'lodestar' which is equal to the number of hours reasonably expended multiplied by the prevailing

---

[2] A breach of an indemnity agreement is a breach of contract claim. *Transamerica Ins.*, 66 F.3d at 719.

hourly rate in the community for similar work." *Smith v. Acevedo*, 478 F. App'x 116, 124 (5th Cir. 2012) (citations omitted). In so doing, the Court should exclude all time that is excessive, duplicative, or inadequately documented. *Id.* Second, the Court can adjust the lodestar based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *Id.* The *Johnson* factors are (1) time and labor required for the litigation; (2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) limitations imposed by the client or circumstances; (8) amount involved and the result obtained; (9) experience, reputation, and ability of attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

It appears that CMGIA requests $11,671.00 in attorneys' fees based on attorney Ryan Dry's affidavit and Plaintiff's Proposed Order. Doc. 14-2, Aff. of Ryan D. Dry, Ex. B; Doc. 14-3, Default J. Mr. Dry provides the following in his affidavit:

> The Surety agreed to compensate the Firm for work based on an hourly fee. I have reviewed the billing entries sent to the Surety in the Lawsuit. As of August 31, 2016, the number of hours worked on the Lawsuit, either by me or by other attorneys and paralegals at the Firm, total approximately 69.4 hours, with the hourly billing rate ranging from $125.00 to $195.00, for total fees (excluding costs and expenses) in the amount of $11,671.00. In my opinion, the billing rates for the attorneys and paralegals representing the Surety constitute reasonable and necessary charges for legal services in commercial litigation matters similar to this case.

Doc. 14-2, Aff. of Ryan D. Dry, Ex. B, at 2. The Court first must calculate the lodestar which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. *Smith*, 478 F. App'x at 124. Dry does not provide enough detail for the

Court to calculate the lodestar amount. While Dry provides the total number of hours worked and a range of rates, it is unclear how many of the hours were worked at a specific rate. Without a breakdown of each individual's hours and rate, the Court cannot appropriately calculate the lodestar amount. Therefore, as to CMGIA's request for attorneys' fees, the Court **DENIES** its Motion pending supplementation of the record.

### 3. Costs

CMGIA requests that court costs be assessed against Defendants, but it does not specify the amount or nature of such expenses. Doc. 14, Mot. for Default J. 1. A prevailing party in a civil action is entitled to recover its costs unless a federal statute, the federal rules, or the court provides otherwise. Fed. R. Civ. P. 54(d)(1). Taxable court costs include: (1) fees paid to the clerk and marshal; (2) court reporter fees for all or part of the deposition transcript; (3) printing costs and witness fees; (4) fees for copies of papers necessarily obtained for use in the case; (5) certain docket fees; and (6) compensation of court appointed experts and interpreters. 28 U.S.C. § 1920. The "Supreme Court has indicated that federal courts may only award those costs articulated in section 1920 absent explicit statutory or contractual authorization to the contrary." *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1045 (5th Cir. 2010) (quoting *Cook Children's Med. Ctr. v. The New England PPO Plan of Gen. Consolidation Mgmt., Inc.*, 491 F.3d 266, 274 (5th Cir. 2007)).

The General Indemnity Agreement states that Defendants may be liable for costs and expenses, but such a broad reference to costs does not offer the Court guidance in awarding the costs incurred in this matter. Doc. 14-1, General Indemnity Agreement, Ex. A-1. CMGIA's present Motion similarly fails to indicate the fees and costs for which it seeks reimbursement. Given the strict nature of the rule regarding such awards, the Court requires that CMGIA specify the amount of costs

incurred and provide an itemized list of reimbursements sought. Accordingly, CMGIA's Motion with respect to costs is **DENIED** pending supplementation of the record.

IV.

CONCLUSION

For the foregoing reasons, CMGIA's Motion for Default Judgment is **GRANTED in part** and **DENIED in part**. Before setting an evidentiary hearing to determine the amount of damages, the Court gives CMGIA permission to supplement the record with regard to damages, attorneys' fees, and costs. CMGIA has until **April 10, 2017** to do so.

**SO ORDERED.**

**SIGNED: March 13, 2017**.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE